# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 112

APRIL TERM, A.D. 2014

*September 9, 2014*

CATHERINE ELIZABETH MARTIN,

Appellant
(Defendant),

v.

PHILLIP DEWITT and JEANNE M.
PRIETO,

Appellees
(Plaintiffs).

S-13-0185

*Appeal from the District Court of Natrona County*
*The Honorable David B. Park, Judge*

*Representing Appellant:*
> John C. Hoard, Attorney at Law, Casper, Wyoming; Kenneth Rosellini, Attorney at Law, Clifton, New Jersey

*Representing Appellees:*
> Thomas F. Reese of Beatty, Wozniak & Reese, Casper, Wyoming

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\* Chief Justice at time of expedited conference*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]   Appellant Catherine Martin contends that the district court committed errors relating to the partition sale of a property she owned as a tenant in common with two relatives.  Appellant focuses her appeal on a judgment determining that she had exclusive possession of the property and owed the other tenants in common rent, as well as an order approving public sale of the property pursuant to Wyo. Stat. Ann. § 1-32-101 *et seq.* (LexisNexis 2013).  We affirm.

## ISSUES

[¶2]   1.      Did the district court err in finding that Appellant possessed the property exclusively without the consent and agreement of the other cotenants and ousted them from it?

        2.      Did the evidence support the district court's findings as to the amount of rent Appellant owed?

        3.      Can a party to a partition action purchase the property at a public auction under Wyo. Stat. Ann. § 1-32-111, and if so, can he bid in the value of his interest in the property and part of a judgment rather than paying cash for it?

        4.      Is a tenant in common who occupies the property entitled to a homestead exemption under Wyo. Stat. Ann. 1-20-101 *et seq.* (LexisNexis 2013) when it is sold as the result of partition?

## FACTS

[¶3]   Appellant and Appellees Phillip DeWitt and Jeanne Prieto are tenants in common of a single family home in Casper, Wyoming.  Appellees filed a petition for partition, and they also claimed that Appellant owed them rent for her exclusive use of the property.  Appellant answered and counterclaimed for partition as well.

[¶4]   A bench trial was held to determine whether Appellant had ousted the other two tenants in common and owed them rent.  Several witnesses evidently testified, but the trial was not reported and therefore no transcript exists for our review.  Appellant filed a statement of what she claimed was the evidence presented, and Appellees responded, disagreeing in material respects as to what had been developed in the hearing.  The court did not settle and approve the statement as required by Wyoming Rule of Appellate Procedure 3.03, which sets forth the mandatory procedure to establish an accurate record of the evidence for appellate review:

If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be filed and served on appellee within 35 days of the filing of the notice of appeal. Appellee may file and serve objections or propose amendments within 15 days after service. ***The trial court shall, within 10 days, enter its order settling and approving the statement of evidence, which shall be included by the clerk of the trial court in the record on appeal.***

W.R.A.P. 3.03 (emphasis added). We have explained that the rule "clearly requires trial court approval of a statement before it can properly be considered settled and become part of the record." *Nw. Bldg. Co., LLC v. Nw. Distrib. Co., Inc.*, 2012 WY 113, ¶ 31, 285 P.3d 239, 247 (Wyo. 2012) (quoting *TOC v. TND*, 2002 WY 76, ¶ 3 n.1, 46 P.3d 863, 867 n.1 (Wyo. 2002)). Because the district court did not settle Appellant's statement of the evidence, it cannot be considered in this appeal. *Maynard v. Maynard*, 585 P.2d 1201, 1202 (Wyo. 1978) (per curiam).

[¶5] When there is no transcript of the trial proceedings or a settled statement of the evidence, we accept the trial court's findings as the only basis for deciding issues pertaining to the accuracy of those findings or the sufficiency of the evidence. *Golden v. Guion*, 2013 WY 45, ¶ 4, 299 P.3d 95, 96 (Wyo. 2013); *Barrett-Oliver v. Quast*, 2013 WY 71, ¶ 10, 302 P.3d 909, 912 (Wyo. 2013). "In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings." *Golden*, ¶ 4, 299 P.3d at 96.

[¶6] Since this Court has been provided neither a transcript of the trial nor a settled statement of the evidence, we accept the following findings the district court included in its judgment:

FINDINGS OF FACT

1. The parties own the house at [], Casper, Wyoming.

2. The parties have agreed to partition and a separate order has been entered concerning partition. That order is incorporated herein by reference.

3. The issues before the Court in the trial were whether Defendant had exclusively possessed the house at [], and if so what rent does the Defendant owe.

4.    It was undisputed that the residence at [] is a single family residence.

5.    It was undisputed that the Plaintiffs, Prieto and Dewitt and the Defendant, Ms. Martin, do not have a good relationship and could not reside in the same residence.

6.    It was undisputed that Ms. Martin moved into the home at [] in June of 2008 and spent seven months of 2008 there.

7.    It was undisputed that at least one of the Plaintiffs repeatedly asked the Defendant to either pay rent or move out of the residence at [].

8.    It was undisputed that the Defendant resided in the residence at [] from January to August of 2009, for a total of eight months in 2009.

9.    It was undisputed that the Defendant moved back into the residence at [] in July of 2010 and has stayed there through the end of February, 2011, for a period of another eight months.

10.    During all of this time period it was undisputed that at least one of the Plaintiffs repeatedly asked the Defendant to either leave the residence or pay rent.

11.    The value of rent for the home at [] was undisputed.  It was testified that for the seven months in 2008 the value of rent for the house is $1800 per month, so that the Defendant should have paid the Plaintiffs 2/3 of that amount, or $1200 per month for a total of $8400 for her exclusive use in 2008.

12.    For the remaining 16 months (2009 through February 2011) the undisputed evidence was that the rental value was $1200 per month, so that the Defendant should have paid Plaintiffs $800 a month for 16 months, or a total of $12,800.

13.    The total amount of rent Defendant owes Plaintiffs is $21,200.

14.	Defendant admitted she paid no rent to Plaintiffs.  She admitted the Plaintiffs have asked her repeatedly to vacate the property.  She admitted the Plaintiffs tried to have her evicted.  She admitted she changed the locks on the house.  She admitted to having excluded agents of the Plaintiffs from the property.

[¶7]	Based upon these findings of fact, the district court concluded as follows:

CONCLUSIONS OF LAW

1.	The Defendant had exclusive possession of this single family residence through her actions.

2.	Since this is a single family residence when the Defendant moved into the house she took exclusive possession knowing that the other co-tenants could not live in this same house while she was living there.

3.	The Defendant refused to vacate the property or to pay rent when asked by the Plaintiffs.  She changed the locks.  She excluded agents of the Plaintiffs from the property.

4.	Each one of these acts of the Defendant establishes her exclusive possession of the property.  As such, by her exclusive possession of the property she ousted the Plaintiffs from the property and must pay them a fair rental value for her use of the property.

Consistent with these findings and conclusions, the district court ordered Appellant to pay Appellees $21,200, plus court costs and attorney fees.

[¶8]	Commissioners were subsequently appointed to determine the value of the home as required by Wyoming's partition statutes, Wyo. Stat. Ann. § 1-32-101 *et seq.*[1]  The commissioners determined the market value of the home to be $70,000.  *See* Wyo. Stat. Ann. § 1-32-109.  In accordance with § 1-32-110, the parties then had the opportunity to elect to purchase the property at the appraised value.  They did not do so, however.

---

[1] As discussed more thoroughly below, the statutes provide for partition by allotment (one tenant may buy the others out) or by sale and distribution of the proceeds if the property cannot be partitioned in kind (by dividing it among the tenants).  Wyo. Stat. Ann. §§ 1-32-109, 110, 111.  A single family urban residential dwelling obviously could not be partitioned in kind in most cases.

4

[¶9]    The district court then ordered a public auction pursuant to § 1-32-111.  Appellees became the successful (and only) bidders by asserting their ownership interests in the property (two-thirds of $70,000) rather than paying cash.  The district court approved the sale.  Appellant moved to set the order approving the sale aside, and she also sought a homestead exemption under Wyo. Stat. Ann. § 1-20-101.  If she was entitled to the exemption, she would have received $20,000, regardless of the judgment for rent.

[¶10]  The district court vacated its order approving the partition sale because it had not approved the use of the value of Appellees' interests in the property as payment when the sale was conducted.  It denied Appellant's claim to a homestead exemption because the partition sale was not a forced sale, relying on *Osborne v. Warner*, 694 P.2d 730 (Wyo. 1985).

[¶11]  Appellees then moved the district court for a new order of public sale that allowed them to apply the value of their ownership interests as tenants in common and the value of their judgment for rent toward a bid on the property, which would also determine that Appellant would not receive funds from the proceeds of sale based upon a homestead exemption.  The court granted the motion and entered a new order of public sale of the property which provided that Appellees could "bid their 2/3 security interest amount and their base judgment amount in lieu of cash at the public sale of this property, if theirs is the highest and best bid."

[¶12]  Appellees were again the highest bidders at the second public sale with a bid of $50,000, which consisted of the value of their interests in the property and a portion of the $21,200 judgment for rent.  In other words, no money changed hands.  The district court approved the sale.  It ordered the sheriff to issue and deliver a deed to Appellees and to:

> make distribution of the sale proceeds as follows:  ½ to Phillip DeWitt; ½ to Jean M. Prieto.  The 1/3 share which would have gone to Catherine Martin is split equally between Phillip DeWitt and Jeanne M. Prieto to satisfy a portion of the judgment rendered April 11, 2011 against Defendant Catherine Elizabeth Martin in the amount of $21,200.00, plus costs.

[¶13]  Appellant timely perfected this appeal.

## DISCUSSION

*Exclusive Possession and Ouster of Cotenants*

[¶14] After a bench trial, the district court concluded that Appellant was at certain times in exclusive possession of the property, that she ousted the other tenants in common by her conduct, and that she was consequently liable to them for rent. *See supra*, ¶ 7. Appellant asserts that the district court erred, arguing that the fact that she occupied the property does not mean that she ousted the Appellees. Having reviewed this conclusion of law *de novo* in light of the district court's findings, we disagree. *See Helm v. Clark*, 2010 WY 168, ¶ 6, 244 P.3d 1052, 1056 (Wyo. 2010).

[¶15] "Tenancy in common is characterized by possession or *the right to possession* of the common property." *Osborn*, 694 P.2d at 733. "Mere possession and use of the entire property by one cotenant is not an ouster . . . so long as the other cotenants remain voluntarily out of possession, and are not kept out of possession by the acts of the possessor-tenant." *Id.* (citations omitted). However, one tenant in common has no right to exclusively possess the property against another cotenant without consent or an agreement to that effect. 20 Am. Jur. 2d *Cotenancy and Joint Ownership* §§ 41-42. As one authoritative secondary source explains:

> . . . An ouster is an express denial of the title and right to possession of the fellow tenant, brought home to the latter openly and unequivocally. Denial of access to a cotenant may be an ouster.
>
> A determination of whether there has been an ouster or exclusion of one cotenant by another depends largely on the circumstances of the particular case; so-called "exclusive possession" may amount merely to sole possession without the actual ouster or exclusion of anyone or a denial or invasion of the rights of other cotenants.

20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 50.

[¶16] When a tenant in common has ousted cotenants from the property, she must answer for the value of her use and occupation. 20 Am. Jur. 2d *Cotenancy and Joint Ownership* §§ 48-50; *see also Clarke v. Boysen*, 39 F.2d 800, 808 (10th Cir. 1930) ("Where a tenant in common wrongfully excludes his cotenant from the common property and holds and claims it adversely to his cotenant, he is liable to his cotenant for the latter's proportionate share of the reasonable rental value of the property, during the period of such occupancy."). "A cotenant in possession of the property, claiming adversely to his or her cotenants, may be charged either on the basis of rent received or of rental value, whichever is greater." 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 49.

[¶17] Because there is no transcript of the trial proceedings or a settled statement of the evidence, we must base our decision on the district court's findings of fact. *Golden*, ¶ 4,

299 P.3d at 96. After careful review, we are convinced that these findings, *see supra*, ¶ 6, are sufficient to support its conclusion that Appellant had exclusive possession of the property through her actions, and that she ousted the cotenants from the property. The district court found implicitly that Appellees did not consent or agree to Appellant's exclusive occupancy of the property for the period of time during which it awarded rent because they asked her to move out or pay rent. Moreover, it found sufficient additional acts amounting to ouster because the property could not be occupied by all tenants (who did not get along), because Appellant declined to move out or pay rent, because she resisted efforts to evict her, because she changed locks on the house, and because she excluded Appellees' agents who were trying to sell the property.

[¶18] Therefore, the district court properly held that Appellant ousted the cotenant Appellees and must pay them the fair rental value for the time she exclusively occupied the property.

### *Amount of Rent Owed*

[¶19] Appellant claims that the evidence does not support the district court's award of rent. We can summarily dispose of this issue. We reiterate that there is no transcript or settled statement of the evidence, and "[i]n the absence of anything to refute the [district court's findings] . . . we assume that the evidence presented was sufficient to support those findings." *Golden*, ¶ 4, 299 P.3d at 96; *Barrett-Oliver*, ¶ 10, 302 P.3d at 912.[2]

[¶20] In the absence of a transcript or statement of the evidence against which to test them, we cannot find the district court's findings to be clearly erroneous. *See Helm*, ¶ 6, 244 P.3d at 1056 ("Findings of fact will not be set aside unless they are clearly erroneous."). Accordingly, we uphold the district court's findings that:

- The value of rent for the seven months in 2008 is $1,800 per month, so that the Appellant should have paid the cotenants 2/3 of that amount, or $1,200 per month for a total of $8,400 for her exclusive use in 2008.

- For the remaining sixteen months—2009 through February 2011—the rental value was $1,200 per month, so that Appellant should have paid the cotenants $800 a month for sixteen months, or a total of $12,800.

- The total amount of rent Appellant owed the cotenants is $21,200.

### *Purchase at Public Auction*

---

[2] Error can be predicated upon an inconsistency between a court's findings and its award even in the absence of a transcript. *Walker v. Walker*, 2013 WY 132, ¶¶ 46-48, 311 P.3d 170, 180 (Wyo. 2013). There is no such inconsistency in this case.

[¶21] In her third issue, Appellant contends that the cotenant Appellees could not purchase the property at a public sale and that the district court erred in concluding otherwise. She argues that an election to buy at the appraised value under § 1-32-110 is the exclusive means by which coparceners can purchase partitioned property. This issue requires us to interpret Wyoming's partition statute. Statutory interpretation is also a question of law, and thus our standard of review is *de novo*. *McTiernan v. Jellis*, 2013 WY 151, ¶ 13, 316 P.3d 1153, 1156 (Wyo. 2013).

[¶22] "Sections 1-32-101 *et seq.* set forth the procedures for partitioning real property between tenants in common or coparceners." *Hutchins v. Payless Auto Sales, Inc.*, 2004 WY 22, ¶ 13, 85 P.3d 1010, 1013 (Wyo. 2004); *see, e.g., Field v. Leiter*, 16 Wyo. 1, 34-46, 90 P. 378, 384-90 (1907) (extensively examining the law relating to partition). When the property cannot be divided in kind without causing manifest injury to its value, the partition statute affords the parties an opportunity to elect to purchase the property at the value appraised by the commissioners. *Hutchins*, ¶ 13, 85 P.3d at 1013; Wyo. Stat. Ann. §§ 1-32-109 & 110. "If no election to take the estate at the appraised value is made, at the instance of a party the court may order the sale thereof at public auction by the sheriff who executed the writ of partition or his successor." Wyo. Stat. Ann. § 1-32-111. The statute then specifies how the sale must be conducted:

> All such sales shall be made at the courthouse unless the court for good cause directs it to be made on the premises. The sale shall be conducted in all respects as a sale upon execution except that it is not necessary to appraise the estate. The estate shall not be sold for less than two-thirds (2/3) of its appraised value as returned by the commissioners. Unless the court directs for good cause the entire payment to be made in cash, the purchase money is payable one-third (1/3) on the day of sale, one-third (1/3) in one (1) year and one-third (1/3) in two (2) years, with interest.

Wyo. Stat. Ann. § 1-32-112.

[¶23] In interpreting statutes, we seek to determine the intent of the drafters, and we begin our quest by examining the ordinary and obvious meaning of the words employed according to their arrangement and connection. *Powder River Basin Res. Council v. Wyo. Oil and Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014). When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words used, and we need not invoke our longstanding rules of statutory construction. *Id.*

[¶24]  The plain and ordinary language contained in the provisions of the partition statute confirms that the district court did not err in allowing the Appellees to purchase the property at the public auction.  A reasonable construction convinces us that an interested party to a partition action is not precluded from bidding at the public sale even though he did not elect to take the property for its appraised value as provided in § 1-32-109. Several reasons support our conclusion.

[¶25]  Appellant correctly points out that § 1-32-109 provides that one coparcener may pay the other owners the appraised value of their interests as determined by the commissioners.  This allows a coparcener an opportunity to purchase the property without having to compete at public sale.  On the other hand, he is required to pay the full appraised price of the other coparceners' interests.

[¶26]  Section 1-32-111 provides for a "public auction" if one of the coparceners does not elect to purchase the property for the appraised value.  The term "public" used in § 1-32-111 is defined as "[o]pen or available for all to use, share, or enjoy."  Black's Law Dictionary 1422 (10th ed. 2014).  Parties to a partition action fall within this definition. Furthermore, "[t]he sale shall be conducted in all respects as a sale upon execution." Wyo. Stat. Ann. § 1-32-112.

[¶27]  The statute that allows for sale on execution in a mortgage foreclosure states that no property can be sold unless "[t]he foreclosing mortgagee, judgment creditor, other foreclosing lienor or an authorized agent of the foreclosing party is present at the sale or has previously waived to the sheriff conducting the sale the right to appear and bid at the sale."  Wyo. Stat. Ann. § 1-18-101(iii) (LexisNexis 2013).  Because the partition statute expressly says that a sale should be conducted the same way as a sale upon execution, this Court can only conclude that the parties to a partition action can likewise bid at the public sale.  "We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of the law when it enacts a statute." *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 47, -- P.3d --, -- (Wyo. 2014).  Had the legislature wanted to prevent parties to a partition action from bidding at public auction and limit them to taking the property for the full appraised value of the other parties' interests, it could easily have used language sufficient to do so, but it instead chose not to narrow the field of potential bidders.

[¶28]  A coparcener who does not take the property under § 1-32-109 takes a risk that a member of the public may pay more than he can or will at public auction, but that would only result in more being paid to each tenant in common.  On the other hand, at a minimum, the coparcener must only pay the other owners their proportionate share of two-thirds of the value of the property at public sale.  We see no reason that the legislature would want to require coparceners to pay more than the public.

[¶29]  Appellant also asserts that there is nothing in the partition statute that allows her cotenants to bid in the value of their interests in the property toward the purchase price. We see the issue from the opposite perspective; that is, there is nothing in the statute to preclude them from doing so.  Reading the provisions of Wyoming's partition statute *in pari materia*, we conclude that the district court did not err in allowing the Appellees to apply their respective interests in the property and a portion of the judgment for rent in the amount of $21,200 to compose their successful bid of $50,000.[3]

[¶30]  The foregoing construction is supported by the alternative remedies Appellees had.  They could have borrowed against their interests or somehow acquired $50,000 to bring to the sale and paid it to the sheriff when they made their bid.  They would have been entitled to receive the proportionate value of their interests by court order when the sale was approved.  In addition, they could have obtained a writ of attachment or garnisheed the funds before or after judgment to pay the award for rent the court found they were owed.[4]  The district court would undoubtedly have ordered the funds paid to them, thus restoring their $50,000 after a circuitous journey.  We can perceive of no reason for the legislature to require coparceners who hold a judgment linked to the property against another tenant in common to navigate such a tortuous route to achieve the same result the district court attained with its direct and sensible order.  The court did not err in ordering the public sale to be conducted as it did.

*Homestead Exemption*

[¶31]  Appellant contends that she is entitled to a homestead exemption in the amount of $20,000 from the sale of the property.  This would require Appellees to pay her that amount regardless of the value of their interests in the property and the value of the judgment they hold against her.  She claims this exemption because she believes that the property was sold at a "forced sale."  We disagree.  Simply put, the partition sale was not a forced sale to satisfy the debt of a creditor.

[¶32]  Homestead rights are found in the Wyoming Constitution and in our statutes.[5]  As is the case with statutes, interpretation and application of the Wyoming Constitution requires *de novo* review.  *Harmon,* ¶¶ 15-16, -- P.3d. at --.  As already explained, we are

---

[3] Bidding in all or part of the judgment against the purchase price partially or completely satisfies the judgment, reducing or eliminating the obligation of the judgment debtor.

[4] *See* Wyo. Stat. Ann. §§ 1-15-103 through 107 (prejudgment attachment) and §§ 1-15-401 through 425 (prejudgment and post-judgment garnishment).

[5] "Homestead rights have their origin in constitutional and statutory provisions and not in the common law, and such rights have been created to shelter the family and to provide it with a refuge from the stresses and strains of financial misfortune." 40 C.J.S. *Homesteads* § 2.  "Homestead laws are a uniquely American institution, having their origins in the great debtor revolution of the era of 'Jacksonian Democracy.'" *Id.*

guided primarily by the intent of the drafters, looking first to the plain and unambiguous language used to discern that intent. *Id.*

[¶33] Article 19, § 9 of the Wyoming Constitution, entitled "Exemption of homestead," states:

> **A homestead as provided by law shall be exempt from forced sale under any process of law**, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon.

Wyo. Const. art. 19, § 9 (emphasis added). In turn, Wyoming's homestead statute provides in pertinent part:

> Every resident of the state is entitled to a homestead not exceeding twenty thousand dollars ($20,000.00) in value, exempt from execution and attachment arising from any debt, contract or civil obligation entered into or incurred.
>
> *     *     *
>
> (a) The homestead is only exempt as provided in W.S. 1-20-101 while occupied as such by the owner or the person entitled thereto, or his or her family.
>
> (b) When two (2) or more persons jointly own and occupy the same residence, each shall be entitled to the homestead exemption.

Wyo. Stat. Ann. § 1-20-101, 102 (LexisNexis 2013), respectively. "The public policy which is the basis for enactment of homestead laws is that the preservation of the home is of a greater social importance than payment of the debts of creditors." *Osborn*, 694 P.2d at 732.

[¶34] In *Osborn*, the tenants in common sought a partition of their property, as do the parties in this case. 694 P.2d at 731-32. We explained that "[t]enants in common have equal rights of possession and one cotenant cannot establish a homestead right as against the interests of other cotenants." *Id.* at 732; *see* 40 C.J.S. *Homesteads* § 43 ("[O]ne joint tenant or tenant in common cannot acquire such a homestead right as will prejudice his or

11

her cotenant's rights or interests."). *Osborne* is on point and renders Appellant's argument unavailing.

[¶35] Furthermore, the record belies Appellant's assertion that the sale was "forced." She has always agreed that a partition sale was the appropriate remedy in this case. She counterclaimed for a partition, and in her pretrial memorandum she represented to the district court that "[t]he parties agree that partition by sale (rather than partition in kind) is the proper form of partition of the Property in this case."

[¶36] Because Appellant undeniably asked the district court to sell the property, we are perplexed that she now claims that the sale was "forced," although we understand her frustration at receiving no proceeds from such a sale. The district court correctly concluded that the sale was "voluntary and not a forced sale." Accordingly, Appellant is not entitled to a homestead exemption as she claims.

## CONCLUSION

[¶37] In the absence of a record or an order settling the record under W.R.A.P. 3.03, we find that the district court properly concluded that Appellant ousted Appellees and owed them rent in the amount it awarded. We find that Appellees were entitled to bid at the public sale of the partitioned property, and that they were entitled to bid the value of their interests in the property and a portion of the monetary award for rent in lieu of payment. We also conclude that Appellant, as a tenant in common in a partition action, is not entitled to a homestead exemption even though she occupied the partitioned property at times.

[¶38] Affirmed.